BLANCHE, Judge.
This appeal arises out of a suit for damages initially brought by Neola Dubois Suire against T. L. James and Company, Inc., and its liability insurer, National Surety Corporation, for damages for personal injuries allegedly suffered by plaintiff when she fell while walking on Twelfth Street in Crowley, Louisiana, during the late hours of March 9 and the early morning hours of March 10, 1967. During the pendency of these proceedings the original plaintiff died, and her children and reputed heirs were substituted as parties plaintiff. From a judgment in favor of defendants and against plaintiffs dismissing the suit, plaintiffs perfected this devolutive appeal. We affirm.
The trial judge summarized his findings of fact and conclusions of law drawn therefrom in Oral Reasons for Judgment, from which we quote approvingly as follows :
“This is a suit originally brought by Neola Suire against T. L. James & Company, Inc. and its insurer, for damages resulting from an alleged accident which occurred on 12th Street between Avenues I and J inside the City of Crowley on the early morning of March 10, 1967. The facts indicate that T. L. James & Company had a contract with the City of Crowley to do certain road work inside the city. Said roadwork was to construct or reconstruct approximately seventy miles of city streets which took two and a half years to complete. Some time after the plaintiff brought her suit she expired and as substituted plaintiffs we have her two children, Harold Suire and Mrs. Dixie Cradeur seeking to recover in her place as her heirs.
*477 “The evidence indicates that on the night in question Mrs. Suire had been to her sister’s house, Mrs. Prejean, who lived on Great Northern Avenue, which was within a half mile from her residence on Avenue K. Near or around midnight she and her son proceeded home leaving Prejean’s residence going down East Northern to Avenue I, they turned right on Avenue I and proceeded down Avenue I until they reached the intersection of I and 12th Street. They took a left on to 12th Street and proceeded down 12th Street until they were approximately to the rear driveway of Albert Brasseur’s property when Mrs. Suire fell and sustained painful injuries. The evidence indicated that the T. L. James Company had scarified 12th Street between Avenue I and Avenue J in December of 1966. They had brought in a roller on December 20, 1966 to pulverize and scarify the soil to prepare it for the soil cement and then the ultimate asphalt. There was construction all over this particular area. Mrs. Brasseur testified that she lived at the corner of Avenue I and 12th Street. She testified that she thought that Mrs. Suire fell approximately in the middle of the street. She also testified, and it was admitted by the defense, that there were no warning signs or barricades between Avenue I and 12th Street, neither were there any flares. She testified that the road had been under construction with blacktop that had already been chopped up and that you could pass with automobiles but that the road was rough. There were holes here and there. The only lighting near the accident was the one street light at the corner of I and 12th Street, which had a regular bulb in it which illuminated the intersection, but because of the foliage and shrubs did not penetrate very far down the street, and Mrs. Brasseur said that at the accident site itself it was very, very dark. Sgt. LeLeux of the Crowley Police Department also testified he was called to the scene just shortly after 12:00 midnight. He testified that the road was very rough and bumpy at this particular site and that Mrs. Suire had fallen in the middle of the street right at the rear driveway of Mr. Bras-seur. Harold Suire testified that he and his mother left the Prejean house and took the route that I have already mentioned. He also testified that his mother’s feet started hurting just prior to the time that they turned onto 12th Street, so he took his shoes off and gave them to his mother and then they proceeded into 12th Street. He testified that earlier that evening, from 5:00 until just before midnight he had been at a barroom and admitted to drinking a minimum of five beers, and possibly more. He lived in this area almost all of his life and testified that it’s just a little longer than a block from his house to the accident site.
“The Court was satisfied from the facts as set forth that the road in question had been rough and bumpy for some time prior to this accident. The Court was also satisfied that there were no barricades or warning signs in the area. The Court was also satisfied from the testimony that there were alternate routes available to Mrs. Suire and her son to take home on the night in question, which would have circumvented the area in question, namely, 12th Street between Avenue I and J and Great Northern where there were loose dogs which could have frightened Mrs. Suire and Harold on their way home.
“The Court feels that it actually would strain the intelligence of this Court to hold or to find that Harold Suire and Mrs. Suire did not know on the night in question that 12th Street had been under construction for some time. The Court feels that they did know that 12th Street had been under construction for some time. I think the most conclusive fact to corroborate this knowledge is the fact that Mrs. Suire requested Harold’s shoes just prior to the time they turned on to 12th Street because she knew the way *478 was rough and full of holes and she wanted a better pair of shoes than her own because she did have weak ankles, she was a portly woman, and she obviously felt that with Harold’s shoes on she could progress the area much better. The Court feels that Mrs. Suire and Harold, having knowledge of the fact that there was construction in’ the area assumed the risk and were put on that much more notice that they had to be extremely careful before they traversed 12th Street at this particular location. The burden on them became quite onerous in view of this knowledge. Also, in view of the knowledge that they had to have that it was very dark at this particular spot, the lights were very poor, which made it incumbent upon them as far as the Court is concerned, if they were going to traverse the area to do it with the utmost care, and possibly even with the additional requirement of using a flashlight to make sure they didn’t encounter any holes in which they could fall. The Court makes no absolute finding that Mrs. Suire did in fact fall in a hole because the evidence is somewhat in doubt as to how she fell. The Court is satisfied that she did fall and sustained very serious injuries. Mrs. Suire never told Harold that she fell in a hole, Harold saw a hole near her feet and assumed that she fell in the hole, and she quite possibly could have fallen in the hole. But the Court makes no particular finding in this particular regard because it feels like it is not crucial to the case for the Court to do so. Harold Suire and Mrs. Suire both knew that it would be dangerous for them to traverse 12th Street at this particular location. They did so, a high degree of care resulted, and they failed to exercise the high degree of care that was necessary and assumed the risk of the injury that resulted to Mrs. Suire.” (Oral Reasons for Judgment, Record, pp. 49 through 52)
The principal argument presented by counsel for plaintiffs, in seeking to reverse the judgment of the trial court in favor of the defendants, is that the late Mrs. Suire was entitled to assume that the road on which she was walking was safe for passage in view of the failure of the defendant-contractor to have placed warning signs or barricades indicating the fact that the street was under construction. Counsel for plaintiffs cites various cases which he contends support the proposition that a pedestrian is entitled to assume that the street is safe and free of obstructions or dangers in the absence of warning signs indicating the contrary.
We are satisfied from our review of the record that this contention is without merit, for even assuming arguendo any negligence on the part of defendant-contractor for failure to place such warning signs, such negligence would not have been a proximate cause of the late Mrs. Suire’s injuries and consequent damages, in view of the trial judge’s express finding of fact that both she and her son, Harold Suire, with whom she was walking, were already aware that the street in question, which was no more than a little more than a block from the house where they resided, had been under construction for a period of several months, which construction was not complete at the time of their use thereof. (Oral Reasons for Judgment, Record, p. 51)
Our review of the record fails to disclose where the trial judge committed any manifest error either in finding that the late Mrs. Suire was reasonably aware of the condition of the street, or in his finding and conclusion that plaintiffs failed to prove the essential elements of their claim by the requisite preponderance of the evidence.
Defendants answered the appeal seeking damages for frivolous appeal. The law with regard to the issue of damages for frivolous appeal has been recently sum *479 marized by the Louisiana Supreme Court in Parker v. Interstate Life & Accident Insurance Company, 248 La. 449, 179 So.2d 634 (1965), wherein the Supreme Court reversed an intermediate appellate court’s judgment awarding damages for frivolous appeal as follows:
“Article 2164 of the Code of Civil Procedure provides that damages may be awarded for frivolous appeal. But, as stated in Lanza Enterprises, Inc. v. Continental Insurance Co., La.App., Third Circuit (cert. denied), 129 So.2d 91, the language of the Article does not have the effect of changing the prior jurisprudence to the effect that damages for frivolous appeal are not allowable unless it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates even though the court is of the opinion that such view is not meritorious. ['Citations omitted]

“ * * * At the outset, it is patent that, when appellate courts are required to assess the sincerity of counsel (or lack thereof) in the stand he advocates, they are dealing in a most nebulous area of subjective beliefs which cannot be determined, save in extremely exceptional circumstances, by judicial rejection of the claim as unsound. For, here, we are not attempting to judge a legal right or wrong but, rather, the truth of an asserted belief in a contention. Accordingly, when counsel proclaims his sincerity, a court finds itself without just cause to disbelieve unless, and only unless, the proposition advocated is so ridiculous or so opposed to rational thinking that it is evident beyond any doubt that it is being deliberately professed for ulterior purposes.” (Parker v. Interstate Life & Accident Insurance Company, 179 So.2d at 636, 637)
Even though we are affirming the judgment against plaintiffs, we cannot say, in light of the foregoing legal pronouncement, that counsel for plaintiffs was insincere in his advocacy, or that this is a case which warrants imposition of damages for frivolous appeal.
For the foregoing reasons, the judgment of the trial court is affirmed, with all costs of this appeal assessed to plaintiffs.
Affirmed.